OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.
 {¶ 2} Defendant-Appellant, The Gables at Green Pastures Nursing Home (hereinafter referred to as "The Gables"), appeals the judgment of the Union County Court of Common Pleas, denying The Gables' motion for summary judgment. On appeal, The Gables asserts that the trial court erred in denying its motion for summary judgment because it is a political subdivision entitled to immunity from suit, because the federal statutory requirements for states and long term care facilities do not provide for a private right of action, and because Ohio law prohibits an award of punitive damages against a political subdivision. Finding that genuine issues of material fact exist regarding whether The Gables had a policy governing the care of patients who are at risk for falls, we affirm the judgment of the trial court.
 {¶ 3} In February of 2005, Curtis Adams ("Adams"), individually and as administrator of the estate of Nannie Martin, deceased, initiated a personal injury action against The Gables. In his complaint, Adams alleged that The Gables negligently caused Martin to fall and suffer a hip fracture, which required her to undergo a total hip replacement procedure.
 {¶ 4} In March of 2005, The Gables filed its answer to Adams' complaint.
 {¶ 5} In June of 2006, The Gables moved for leave to file an amended answer, instanter, in order to add the defense of political subdivision immunity, which the trial court granted. The Gables also moved for summary judgment based on political subdivision immunity because it is owned by Union County. Subsequently, Adams moved to vacate the trial court's order granting The Gables' motion for leave to amend its answer. Adams also filed his brief in opposition to The Gables' motion for summary judgment and, in the alternative, a motion for leave to perform additional discovery pursuant to Civ. R. 56(F).
 {¶ 6} During the course of discovery, The Gables deposed Adams' expert witness, Nicole Marie Spring. Spring is a registered nurse and consultant who has never worked for The Gables. Spring reviewed The Gables' records of Martin's stay at The Gables from June 1, 2001 to June 5, 2005 and compiled a report summarizing her findings, as well as a chronology of events. In her report, Spring concluded:
 The Fall Risk Assessment completed on June 2nd determined that [Martin] was to automatically be considered at high risk for falling as a result of her fall on May 29th at home. The Fall Risk Assessment indicated that an Acute Fall Care Plan was to be initiated. That evening, at 11 p.m. she was found to be standing in the middle of her room, confused, agitated, and wanting to go home to use the bathroom. She was assisted back to bed and a pressure sensitive alarm was put in place to alert staff of any attempts to transfer unassisted. At 5:30 p.m. on June 4, 2001, after multiple attempts, occurring every 10-15 minutes, to self transfer from her bed to the chair or the chair to her bed, [Martin] was found on the floor. At that time it was determined that there was no evidence of injury. The next morning, June 5th, she would not bear weight on her left leg and complained of discomfort. At 2:30 p.m. the preliminary x-ray report of a fractured left hip was received by Nursing who in turn notified the physician. Orders were received to send [Martin] to the Memorial Hospital of Union County Emergency Room. * * * [Martin's] care at The Gables At Green Pastures fell below the standard of care in the following areas:
 1. Failure to implement an Acute Fall Care Plan
 2. Failure to provide for patient safety
 3. Failure to properly supervise to prevent accidents
 4. Failure to prevent injury
(Spring Depo., Ex. 2, pp. 1-2).
 {¶ 7} Spring's chronology included documentation of "The Fall Risk/Alarm Assessment" conducted on June 2, 2001, recorded as follows:
 Fall History: Last 30 days — One fall
 Total Score: 19 (14-19 = Moderate Risk)
 * * Any score of 1 to 3 in Fall H[istory] makes the resident an
 AUTOMATIC HIGH RISK!!!!
 For ALL risk scores:
 B: Initiate an Acute Fall Care Plan
(Spring Depo., Ex. 3, p. 2).
 {¶ 8} Based on the above records, Spring testified that The Gables deviated from the standard of care because it failed to develop and implement "the acute care plan for falls, the immediate plan of care, any kind of care plan that spoke to her high risk of falls. * * * That's also related to their own policy and procedure that's stated on their fall history. It says that any score in the 1 to 3 in fall history makes the resident an automatic high risk, and for all high risk scores initiate an acute fall care plan. And the records are silent as to that being done." (Spring Depo. pp. 51-52).
 {¶ 9} In a three sentence judgment entry, the trial court summarily denied both The Gables' motion for summary judgment and Adams' motion to vacate the order granting leave to The Gables to amend its answer.
 {¶ 10} It is from this judgment that The Gables appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF-APPELLEE'S ENTIRE COMPLAINT.
 Assignment of Error No. II THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT ON THAT PART OF COUNT II OF PLAINTIFF-APPELLEE'S COMPLAINT RELYING UPON 42 C.F.R. § 483.
 Assignment of Error No. III THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF-APPELLEE'S CLAIM FOR PUNITIVE DAMAGES.
 {¶ 11} Because all three assignments of error address the trial court's decision to deny The Gables' motion for summary judgment, we will use the following standard of review throughout this entire opinion.
 Standard of Review {¶ 12} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co., 148 Ohio App.3d 596,2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton CitySchool Dist. Bd. Of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ. R. 56(C); Horton v. Harwick Chemical Corp., 73 Ohio St.3d 679,686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 358-59, 1992-Ohio-95.
 {¶ 13} The party moving for summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. State ex rel. Burnes v. Athens CityClerk of Courts, 83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also,Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Assignment of Error No. I {¶ 14} In its first assignment of error, The Gables contends that the trial court erred in denying its motion for summary judgment in its entirety. Specifically, The Gables asserts that it is immune from liability because its decisions concerning which fall interventions to employ constituted an exercise of judgment or discretion included in the defense to liability under R.C. 2744.03(A)(5).
 {¶ 15} R.C. 2744 governs political subdivision immunity from civil liability. A reviewing court must engage in a three-tiered analysis to determine whether a political subdivision is entitled to immunity from civil liability under R.C. 2744. Hubbard v. Canton Cty. Schl. Brd. OfEd., 97 Ohio St.3d 451, 2002-Ohio-6718 at ¶ 10, citing Cater v.Cleveland, 83 Ohio St.3d 24, 28, 1998-Ohio-421. The first tier in this analysis is to determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with either a governmental or proprietary function. R.C. 2744.02(A)(1); Hubbard at ¶ 10. The general rule is that political subdivisions are not liable in damages. Id. If it is determined that an entity is a political subdivision entitled to immunity under the first tier in the analysis, then the court must move to the second tier and determine whether any of the exceptions to immunity enumerated in R.C. 2744.02(B) apply. Hubbard at ¶ 12, citing Cater, 83 Ohio St.3d at 28. If any of the R.C. 2744.02(B) exceptions to immunity are found to be applicable, then the political subdivision can reinstate immunity under the third tier by proving that one of the defenses to liability in R.C. 2744.03 applies. Cater, 83 Ohio St.3d at 28.
 {¶ 16} Herein, neither party disputes that both the first and second tiers of the immunity analysis are satisfied because under the first tier, R.C. 2744.02(A)(1), The Gables is a political subdivision and the alleged harm occurred in connection with a proprietary function, and under the second tier it is liable for the allegedly negligent acts of its employees in carrying out the proprietary function. See R.C. 2744.02(B)(2). Thus, the issue before us is whether any of the R.C. 2744.03 defenses apply to reinstate The Gables' immunity under the third tier of the immunity analysis.
 {¶ 17} The Gables claims that the defense in R.C. 2744.03(A)(5) applies, which provides:
 The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
Adams responds that, under R.C. 2744.03(A)(5), immunity for discretionary decisions only applies to political subdivisions themselves and not to individual employees. Thus, Adams argues that The Gables' employees were required to implement an acute fall care plan pursuant to The Gables' own discretionary policy, and failure by The Gables' employees to do so does not fit within the discretion encompassed by the R.C. 2744.03(A)(5) defense.
 {¶ 18} Before addressing the issue of immunity, we note that both parties focus on what type of decisions are included in the defense to liability under R.C. 2744.03(A)(5) with respect to The Gables' alleged policy governing the care of patients who are at risk for falls. However, the record provides little evidence that such a policy existed. Neither a written copy of the policy, nor any testimony from The Gables' management or employees about the existence of the policy, was submitted. The only evidence that The Gables had a policy governing the care of patients who are at risk for falls was Spring's testimony that the Fall Risk Assessment results listed in The Gables' records constituted such a policy.
 {¶ 19} Because it is unclear from the evidence before us that a policy existed, any determination regarding an exercise of discretion with respect to such a policy for purposes of R.C. 2744 immunity is premature. Therefore, we affirm the trial court's denial of summary judgment, finding that genuine issues of material fact exist as to whether The Gables did in fact have a policy in place governing the care of patients who are at risk for falls.
 {¶ 20} Accordingly, The Gables' first assignment of error is overruled.
 Assignment of Error No. II {¶ 21} In its second assignment of error, The Gables contends that the trial court erred in denying its motion for summary judgment regarding Adams' reliance upon 42 C.F.R. § 483 et seq. Specifically, The Gables asserts that 42 C.F.R. § 483 et seq. does not provide a private right of action to individuals. In response, Adams submits that he did not assert a federal cause of action based on this provision, concedes that it does not provide a private right of action, and asserts that it is merely probative of The Gables' alleged negligence.
 {¶ 22} Because Adams concedes that 42 C.F.R. § 483 et seq. does not provide for a private right of action, and that he is not asserting a federal cause of action based on this provision, The Gables' second assignment of error is overruled as moot.
 Assignment of Error No. III {¶ 23} In its third assignment of error, The Gables asserts that the trial court erred in denying its motion for summary judgment regarding Adams' claim for punitive damages. Specifically, The Gables contends that Ohio's Political Subdivision Tort Liability Act prohibits an award of punitive damages against a political subdivision under R.C. 2744.05(A), and that, even if Adams could pursue a claim for punitive damages, he has not presented any evidence justifying an award of punitive damages under the punitive damages statute, R.C. 2315.21.
 {¶ 24} Based on the disposition of The Gables' first assignment of error, we decline to address this issue. See App. R. 12(c).
 {¶ 25} Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court and remand for further proceedings consistent with the opinion.
Judgment Affirmed.
 CUPP and SHAW, J.J., concur.